# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO

Douglas H Smith
16400 Marks Road
c/o Columbia Station, Ohio [44028]
Tel:440-846-1304
douglash@roadrunner.com

| | |
|---|---|
| DOUGLAS H SMITH | ) COMPLAINT FOR AN IMMEDIATE |
| | ) ORDER FOR RELIEF |
| Plaintiff, | ) |
| | ) Court case # 14CV0652 |
| v. | ) |
| | ) |
| KEYBANK, N.A., et al; | ) |
| | ) JUDGE NUGENT |
| | ) |
| Defendant(s), | ) MAG. WHITE |
| | ) |

## COMPLAINT AND MEMORANDUM
## IN SUPPORT OF AN IMMEDIATE ORDER FOR RELIEF

Comes now plaintiff, Douglas H Smith, real party in interest and owner/beneficiary for the KEYBANK, N.A. personal checking account #846180454 in the name of DOUGLAS H SMITH , for his causes of action against KEYBANK, N.A. et al., states and alleges as follows:

### INTRODUCTION:

**1.** This action for an immediate order for relief and for damages due to the negligent debiting of $43,244.35 from Plaintiff's checking account #846180454 by the Defendant(s).

**2.** The Defendant(s) agents, acting in the scope of their employment consciously, wrongly, without compensation and without due process of law have effected a taking of property from the Plaintiff. See Affidavit in Support of Plaintiff's Complaint, paragraphs #1, 2, and 3.

### JURISDICTION AND VENUE:

**3.** This action for an immediate order for relief and damages is predicated on the provisions of the Constitution and Statutes of the United States, the legal and equitable jurisdiction of this Court, the principles of common law, and this Court's concurrent and pendant jurisdiction.

/

**4.** *This Court has jurisdiction over the Plaintiffs' claims under Article III of the United States Constitution and the Fifth Amendment thereto. This Court has jurisdiction over Plaintiffs' property rights under the foregoing citations and, in addition, pursuant to NORTH EASTERN DISTRICT of OHIO Local Rule 3.8, 28 USC §§1331, 1343, and the numerous case laws stated herein.*

**5.** *Venue is proper in this Court under Title 28 U.S.C. §1391(b) (2). The substantial part of the property, and the acts related to such property subject to Plaintiffs' claims, occurred or was situated in this Northern District, CLEVELAND, OHIO at all times relevant.*

**THE PARTIES:**

*6. Plaintiff Douglas H Smith, real party in interest.*

*7. Defendant KEYBANK, N.A., is a U.S. regional banking corporation, headquartered at 127 PUBLIC SQUARE, CLEVELAND, OHIO 44114 . The commercial office involved in this action is located at the following address: 17333 SOUTHPARK SQUARE, STRONGSVILLE, OH 44136*

**FACTUAL CONTENTIONS APPLICABLE TO KEYBANK, N.A.:**

*8. Plaintiff had entrusted his funds to the KEYBANK, N.A., a financial institution licensed under the laws of the State of Ohio(herein referred to as Defendant). As such, KEYBANK had a fiduciary relationship with the plaintif and a resulting higher fiduciary responsibility over the funds with which they have been entrusted.*

*9. Notwithstanding this fiduciary duty, Defendant, when served with a "notice of levy" from the IRS, sent funds in the plaintiffs' personal checking account to the IRS. This was done even though the Plaintiff had objected to the procedures followed by the IRS and did so via sworn Affidavit, Notice and Demand by Administrative Protest. See Affidavit in Support of Plaintiff's Complaint sworn on March ___24___, 2014, paragraph #4.*

*10. Furthermore, Plaintiff received a first letter from Defendant stipulating that Defendant was relying on the account agreement with Plaintiff even after plaintiff objected. Said Defendant letter contained no rebuttal in the form of sworn prima facie evidence answering on a point for point basis the demands made in Plaintiff's Administrative Protest. See Affidavit in Support Plaintiff's Complaint, sworn on March ___24___,2014, paragraph #8.*

*11. Plaintiff caused to be prepared and mailed a response to this first Letter. Plaintiff received about March 3, 2014ved a second letter form Defendant See Affidavit in Support Plaintiff's Complaint, sworn on March ___24___,2014, paragraph # 9.*

*12. Plaintiff received a second letter from Defendant about March 5, 2014, which letter contained no rebuttal in the form of sworn prima facie evidence answering on a point for point basis to the demands made in Plaintiff's Administrative Protest. See Affidavit in Support Plaintiff's Complaint, sworn on March ___24___,2014, paragraph # 10 .*

**13.** *Plaintiff then caused to be prepared and mailed by Lance Harris, Notary Public, an offer to settle the matter. See Affidavit in Support Plaintiff's Complaint, sworn on March _____ ,2014, paragraph # 11.*

**14.** *As of March 2*4*,2014, Plaintiff has not received a response to the above offer.*

**15.** *It appears that the proper action by Defendant would have been to interplead Plaintiff's funds to protect itself from competing claims on those funds.*

**16.** *Neither did Defendant do anything to investigate the concerns of its depositor other than remitting Plaintiff's property to the IRS. However, the Plaintiffs' concerns as presented to the Defendant merited investigation and research.*

**17.** *Per case law below, Defendant had, as mentioned above, a Fiduciary duty to protect Plaintiff's funds. However, Defendant breached that duty and gave over Plaintiff's funds to the IRS.*

**18.** *Note the following in regards to the maximum effect that can occur based on an IRS Notice of Levy as stated by Judge Kerner in the United States Court of Appeals Seventh Circuit, 187 F.2d 225 (1951) Given v Cripe, et al: 187 F.2d 225*

> *"As we interpret the facts, the notice of levy operated to freeze the assets of the taxpayer in the hands of the Bank, and no more."*

## FACTUAL CONTENTIONS AS TO THE ILLEGALITY AND UNLAWFUL STATUS OF THE IRS NOTICE OF LEVY

**19.** *The Plaintiff argues that the mere sending of a "Notice of "Levy" is inadequate for seizure of funds by the IRS pursuant to the Internal Revenue Code and case law. In Goodwin v. The United States, 935 F2d.1061) our Circuit Court of Appeals held that the IRS must strictly comply with the statutory requirements when seizing a taxpayer's property. At page 1065 the court stated: Congress has set forth precise requirements for notice of seizure and sale of property in tax deficiency situations. "[W]hen the government seeks to enforce the laws, it must follow the steps which congress has specified." Reece v. Scogins, 506 F. 2d 967, 970-71 (5th Cir. 1975) A mere notice of intent to levy does not meet this requirement.*

**20.** *Similarly, the court in U.S. v. O'Dell, F2d. 304, at 307 (6th Cir. 1947) stated on this issue:*

> *"This paragraph describes a mere statement or Notice of Claim. Nothing alleged to have been done amounts to a levy, which requires that the property be brought into legal custody through seizure, actual constructive, levy being 'an absolute appropriation in law of the property levied upon.' Rio Grande R Co. v ~Gomila, 132 US 478, 10 S. Ct. 155 33 L.Ed. 400; In re Weinger, Bergman and Co., D.C, 126 F 875 877; Smith v. Packard, 7th Cir., 98 F. 793. Levy is not effected by mere notice. Hollister v. Goodale, 8 conn. 332, 21 Am. Dec. 674; Meyer v. Missouri Glass Co., 65 Ark. 286, 45 S.W.. 1062, 67 Am. St. Rep. 927; Jones v. Howard, 99 Ga. 451, 27 S.E. 765, 59 Am. St*

118  rep. 231. Section 3692 does not prescribe any procedure for accomplishing a levy upon a bank

119  account. The method followed in the cases is that the issuing warrants of distraint, making the

120  bank a party <u>and serving with the Notice of Levy</u> a copy of the <u>warrant of distraint and notice of</u>

121  <u>lien</u>(underlining Plaintiff). Cf. Commonwealth Bank v. U.S., 6th Cir.,115 F2d 327; U.S. v. Bank of

122  the United States, D.C.  5 F Supp. 942, 944. No warrants of distraint were issued here. The IRS did

123  nothing more than send "a notice of levy."  When the Plaintiff pointed out the deficiency in the

124  procedure for seizure of his money to KEYBANK,  no efforts were made by  KEYBANK to require

125  strict compliance of the Internal Revenue Code or otherwise investigate this matter further.

126  **21.** In further support of the mandate that a Notice of levy be accompanied by Warrant of

127  Distraint signed by a judge( KEYBANK has not provided evidence of Warrant of Distraint), please

128  observe the following:

129     **i.** 113 Supp. 878, Page 878, In re Holdsworth

130       Under sections of Internal Revenue Code providing for collection of taxes by levy and

131       distraint **, a mere notice of levy is not tantamount to an effective levy upon and**

132       **distraint** of all sums of money due from debtors of bankrupts, in absence of warrant of

133       distraint. 26 U.S.C.A. § 3690, 3692, 3710(a).

134     **ii.** 113 Supp. 878 Page 880, In re Holdsworth:

135       Under sections of Internal Revenue Code providing for collection of taxes by distraint and

136       sale, and for levy upon property and rights of property belonging to delinquent taxpayer, **an**

137       **actual or constructive seizure is essential to a valid levy and distraint,** and where

138       subject matter is an account receivable or chose in action, seizure may be effected by a levy

139       and the service of a warrant of distraint upon the debtor. 26 U.S.C.A. §§ 3690, 3692, 3710(a).

140     **iii.** 113 Supp. 878 Page 880, In re Holdsworth:

141       We are of the opinion that in **the absence of a warrant of distraint a mere notice of**

142       **levy is not tantamount to an effective levy** upon and distraint of "all sums of money

143       due "from the said debtors of the bankrupts. United States v. O'Dell, 6 Cir., 160 F.2d 304, 30

144       Givan v. Cripe, 7 Cir., 187 F.2d 225, 228. **An actual or constructive seizure is essential**

145       **to a valid levy and distraint** ;

146     **iv.** Please note the following quotes from O'Dell and Givan v Cripe supra:

147       " <u>mere notice of intent to levy is insufficient</u>." United States v. O'Dell, 6 Cir., 1947, 160 F.2d 304,

148       307. Accord, In re Holdsworth, D.C.N.J. 1953, 113 F.Supp. 878, 888; United States v. Aetna Life

149       Ins. Co. of Hartford, Conn., D.C.Conn. 1942, 146 F.Supp. 30, 37, in which Judge Hincks observed

150       that he could "<u>find no statute which says that a mere notice shall constitute a 'levy.</u>'" There are

151       cases which hold that a warrant for distraint is necessary to constitute a levy.  Givan v. Cripe, 7

152       Cir., 1951, 187 F.2d 225; United States v. O'Dell, supra.  The Court of Appeals for the Third Circuit

153     *stated in its opinion, 221 F.2d at page 642, "These sections [26 U.S.C. §§3690-3697] require that*

154     *levy by a deputy collector be accompanied by warrants of distraint [issued by a judge in a legal*

155     *proceeding]." In re Brokol Manufacturing Co., supra.*

156   **v.** *The IRS' own manual is supportive of the need for Warrant of "Distraint to be ob-*

157     *tained and is in agreement with O'Dell: Certified copies of the Warrants of Distraint*

158     *supporting the issuance of Notices of Levy form 668(y) Page 57(16) of the Internal Revenue*

159     *Manual entitled "Legal Reference Guide for Revenue Officers" Comfirms (in the upper right*

160     *hand corner of the page) that a Court Order (warrant of distraint) is necessary. I say*

161     *"confirms" because the Manual is merely referring to established principles of law, it is not in*

162     *and of itself the law that requires it. Moreover, the IR Manual shows that the I.R.S. even*

163     *agrees with those established principles and encourages their agents to abide by those*

164     *principles. See Affidavit in Support of Plaintiff's Complaint sworn on March 24 ,2014*

165     *paragraph #5 and #6 .*

166   **22.** *The IRS' Notice of Levy fails to be valid due to the following legal mandate:The IRS Notice of*

167 *Levy did not have an Office of Management and Budget number printed on it as mandated by the*

168 *paperwork Reduction Act of 1995 and such document is void per the United States Court of*

169 *Appeals for the 9th Circuit stated in U.S. v. Smith, 866 F.2nd 1092 (1989):*

170

171     *" any government information request form not exhibiting an OMB Control Number is a "bootleg form" and can be*

172     *ignored."*

173 *See Affidavit in Support of Plaintiff's Complaint, sworn on March 24 ,2014, paragraph #7*

174   **23** *Plaintiff is not and has never been an officer, elected official, or employee of the Federal*

175 *Government, establishing that Plaintiff was subject to <u>non-judicial Levy. See</u> attached letter from*

176 *Congressman Hertel from Michigan regarding Notices of Levy. SeeExhibit A.*

177   **i** *Also, consider the following from 26 USC, sec 6331:*

178     *(a) Authority of Secretary*

179     *If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it*

180     *shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the*

181     *expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under*

182     *section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of*

183     *such tax. <u>**Levy may be made upon the accrued salary or wages of any officer, employee, or**</u>*

184     *<u>**elected official, of the United States, the District of Columbia, or any agency or instrumentality**</u>*

185    *of the United States or the  District of Columbia, by serving a notice of levy on the employer (as*

186    *defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary makes a*

187    *finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax*

188    *may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be*

189    *lawful without regard to the 10-day period provided in this section.*

190    **24.**  *It's quite plain why the IRS removed paragraph (a) from their Notice of Levy, because it*

191    *clearly states that only employees or officers of the United States Government may be non-*

192    *judicially levied.  The IRS is NOT authorized to non-judicially levy private citizens who are not*

193    *officers or "employees" of the United States government.*

194    *26 CFR §31.3401(c ) Employee: "...the term [employee] includes officers and employees,*

195    *whether elected or appointed, of the United States, a [federal] State, Territory,*

196    *Puerto Rico or any political subdivision, thereof, or the District of Columbia,*

197    *or any agency or instrumentality of any one or more of the foregoing.  The term*

198    *employee' also includes an officer of a corporation."*

199    **25.** *The defendant(s) were granted ten (10) days to controvert the statements and/or claims made*

200    *by the Plaintiff via Administrative Protest by executing and delivering a verified response point by*

201    *point, in affidavit form, sworn and attested to, signed by Defendant(s) with evidence in support.*

202    **26.** *The Defendant(s) received an  Administrative Protest, which was prepared by Notary Public*

203    *Lance J Harris and having failed to provide a valid response the Defendant(s) are now in default.*

204    *Since the defendant(s) admitted the statements and claims by TACIT PROCURATION,  all issues*

205    *are deemed settled RES JUDICATA, STARE DECISIS and COLLATERAL ESTOPPEL and as a*

206    *result, JUDGMENT IS BY ESTOPPEL and not subject to appeal. The Defendant(s) may not argue,*

207    *controvert, or otherwise protest the finality of the administrative findings in any subsequent*

208    *process, whether administrative or judicial. See Affidavit in Support of Plaintiff's Complaint, sworn on*

209    *March_____,2014, paragraph #4*

210    **27.** *In Loucks v. Albuquerque National Bank, 76 N.M. 735, 3 U.D.C.Rep. 709, 418 P.2d 191 (1966),*

211    *holds that punitive damages are allowable when the conduct of the bank is "maliciously*

212    *intentional, fraudulent, oppressive, or committed recklessly, or with a wanton disregard of the*

213    *depositor's rights."*

214    **28.**  *The criminal conduct of the defendant(s)  has caused the Plaintiff "significant hardship" and*

215    *"economic harm" whereby the Plaintiff was less able to engage in commercial endeavors than if his*

216    *property had not been illegally seized.*

217    ***FIRST CAUSE OF ACTION ("Ex Contracto")***

218    ***THEFT BY DECEPTION; (Fraudulent Concealment and Fraudulent Conveyance):***

**29.** *Plaintiff incorporates by reference as though fully set forth herein, all of the allegations contained in Paragraphs 1 through 28 above.*

**30.** *Pursuant to exhibit I under item#4 of Plaintiff's Affidavit, which is incorporated by reference as though fully stated herein, the Defendant(s) admit, acknowledge and are in full agreement to the statements made in the "NOTICE OF INTENT TO SUE and accompanying AFFIDAVIT DECLARATION regarding the Defendant(s) accountability for conduct/behavior as a representative of KEYBANK .*

**31.** *About August 2009, the Defendant(s), acting without just cause, did consciously, knowingly, intentionally and wrongfully cause certain acts and omissions to proceed in such manner as to hinder, delay, and ultimately prevent the distribution of moneys held for the benefit of the Plaintiff.*

**32.** *The Defendant(s), knew or should have known that the Plaintiff had a vested interest and Constitutional right to receive said moneys in a timely, unfettered and unconstrained manner when they committed the acts and omissions set forth above, causing the Plaintiff to be deprived of property without just compensation and without due process of law.*

**33.** *The Defendant(s) did unlawfully, wrongfully, and with malicious forethought contrary to well-established law debit $43,244.35 USD from the Plaintiffs' personal checking account #846180454. Compensatory damages demanded for the first cause of action is $43,244.35 x 3 = $129,733.05 USD.*

**SECOND CAUSE OF ACTION ("Ex Contracto")**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**34.** *Plaintiff incorporates by reference as though fully set forth herein, all of the allegations contained in Paragraphs 1 through 33 above.*

**35.** *In HAE WON LEE vs. BANK OF AMERICA, 218 Cal.App.3d 914 (1990); Judge J. (Fred) Woods stated:*

> *"Until very recently, the law in California held a bank depositor may maintain a cause of action against her bank for breach of the covenant of good faith and fair dealing. The case which most clearly sets forth the rule is Commercial Cotton Co. v. United California Bank (1985) 163 Cal. App.3d 511 [209 Cal. Rptr. 551, 55 A.L.R.4th 1017]. "*

*There, the Fourth Appellate District, Division One held a depositor in a noninterest-bearing checking account may sue its bank for breach of the covenant of good faith and fair dealing following the bank's refusal to reimburse the depositor when the bank improperly honored a forged check drawn on the depositor's account. (Id. at p. 516.)*

*In holding the depositor could maintain this cause of action against the bank, the court analogized the depositor/bank relationship to that of the insured/insurer relationship. "[B]anking and insurance have much in common, both being highly regulated industries performing vital public services substantially affecting the public welfare. A depositor in a noninterest-bearing*

*checking account, except for state or federal regulatory oversight, is totally dependent on the banking institution to which it entrusts deposited funds and depends on the bank's honesty and expertise to protect them. While banks do provide services for the depositor by way of monitoring deposits and withdrawals, they do so for the very commercial purpose of making money by using the deposited funds. The depositor allows the bank to use those funds in exchange for the convenience of not having to conduct transactions in cash and the concomitant security in having the bank safeguard them.*

*The relationship of bank to depositor is at least quasi-fiduciary, and depositors reasonably expect a bank not to claim nonexistent legal defenses to avoid reimbursement when the bank negligently disburses the entrusted funds." (163 Cal. App.3d at p. 516.)*

**36.** *Other courts, although not always expressly discussing this issue, appear to agree a bank customer, under the proper facts, may proceed against her bank for breach of the covenant of good faith and fair dealing. (See Sanchez-Corea v. Bank of America (1985) 38 Cal.3d 892, 897, 910 [215 Cal. Rptr. 679, 701 P.2d 826] [judgment against bank based upon, inter alia, breach of the covenant of good faith and fair dealing reinstated on appeal]; Kruse v. Bank of America (1988) 202 Cal. App.3d 38, 57-58 [248 Cal. Rptr. 217] [1st. Dist., Div. 1]; Chicago Title Ins. Co. v. Superior Court (1985) 174 Cal. App.3d 1142, 1156-1158 [220 Cal. Rptr. 507] [1st. Dist., Div. 2]; E.F. Hutton & Co. v. City National Bank (1983) 149 Cal. App.3d 60, 72-74 [196 Cal. Rptr. 614] [2d. Dist., Div. 1]; Sawyer v. Bank of America (1978) 83 Cal. App.3d 135, 139 [145 Cal. Rptr. 623] [1st Dist., Div. 4]; AARTS Productions, Inc. v. Crocker National Bank (1986) 179 Cal. App.3d 1061, 1069 [225 Cal. Rptr. 203] [6th Dist.].)*

**37.** *Additionally, review of out-of-state decisions indicates the overwhelming majority either expressly or implicitly recognize a bank customer may proceed against its bank on this theory. (See, e.g., Alaska Statebank v. Fairco (Alaska 1983) 674 P.2d 288, 291; Touche Ross Ltd. v. Filipek (Hawaii Ct. App. 1989) 778 P.2d 721, 730; In re Cedar Const. Co. (Bankr.W.D.Mich. 1986) 63 B.R. 228, 238 [bankruptcy court applying Michigan law]; Noonan v. First Bank Butte (1987) 227 Mont. 329 [740 P.2d 631, 634]; Bonady Apartments v. Columbia Banking (1983) 119 Misc.2d 923 [465 N.Y.S.2d 150, 154], modified 99 A.D.2d 645 [472 N.Y.S.2d 221]; Happy Cattle Feeders v. First Nat. Bank (Tex. Ct. App. 1981) 618 S.W.2d 424, 427; Garner v. Hichman (Wyo. 1985) 709 P.2d 407, 411; but see Keeton v. Bank of Red Bay (Ala. 1985) 466 So.2d 937, 940, fn. 1 [no bad faith action against banks]; accord Betterton v. First Interstate Bank of Arizona (8th Cir.1986) 800 F.2d 732, 736 [interpreting Arizona law]; Washburn v. Union Nat. Bank and Trust Co. (1986) 151 Ill. App. 3d 211 [502 N.E.2d 739, 743]; see generally, Annot., Bank's Liability for Breach of Implied Contract of Good Faith and Fair Dealing (1987) 55 A.L.R.4th 1026 and cases cited therein.)"*

**32.** *The Wallis test held the following characteristics must be present in a noninsurance contract to be tortuously breached: "(1) the contract must be such that the parties are in inherently unequal*

bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party `whole'; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability." (160 Cal. App.3d at p. 1118; accord Rogoff v. Grabowski (1988) 200 Cal. App.3d 624, 631 [246 Cal. Rptr. 185] [per Lillie, P.J.].)

The relationship between the Plaintiff and Defendant(s) meets all of the prongs of the Wallis test. First, the relationship between the Plaintiff and the Defendant(s) are inherently unequal. The Plaintiff is hardly in a position to negotiate the terms and conditions of his checking account or how the Defendant(s) will handle certain transactions.

Second, the motivation for the Plaintiff applying for a checking account is nonprofit. As the court in Commercial Cotton Co. explained, "[t]he depositor allows the bank to use those funds in exchange for the convenience of not having to conduct transactions in cash and the concomitant security in having the bank safeguard them." (163 Cal. App.3d at p. 516.)

Third, ordinary damages are inadequate to deter the Defendant(s) from wrongful conduct or to make the Plaintiff whole. Contract damages alone would only require the Defendant(s) to repay the money erroneously paid out. The Defendant(s) would not be required to compensate the Plaintiff for any emotional distress suffered as a consequence of the Defendant(s) allegedly tortuous conduct. (See Wallis v. Superior Court, supra, 160 Cal. App.3d at p. 1119.)

Fourth, the Plaintiff is in an extremely vulnerable position since he cannot monitor the Defendant(s) conduct or readily compel the necessary corrective action once the Defendant(s) have acted tortuously. If, as the bank did in Commercial Cotton Co., the bank refuses to credit the funds erroneously paid out, the Plaintiff is then effectively barred from using his own money until the Defendant(s) agree to remedy the wrong. (Commercial Cotton v. United California Bank, supra, 163 Cal. App.3d at p. 516 ["A depositor in a noninterest-bearing checking account … is totally dependent on the banking institution to which it entrusts deposited funds and depends on the bank's honesty and expertise to protect them"].)

Finally, it may fairly be assumed the Defendant(s) are aware of the precarious position in which it places the Plaintiff when it wrongfully dishonors a check or prevents the Plaintiff from using his deposited funds.

When the Defendant(s) breach its duty of good faith to the Plaintiff,  it places the Plaintiff in the same financial dilemma as in the insurance context. The Plaintiff who is improperly denied the use of his own money is essentially denied the right of support. The Plaintiff cannot turn to the marketplace for that money but instead must wait until the Defendant(s) either chooses to honor its good faith duty or is compelled to do so by the trial courts. This is no different from the insured who

327  is denied the right to his insurance proceeds and must either await payment from the insurer or sue
328  in the courts.

329   Further, the Defendant(s), just as an insurer, is selling protection when it agrees to act as a
330  depository for the Plaintiffs' money and to pay that money upon demand. The Plaintiff seeks out
331  the Defendant(s) specifically to enjoy that protection and convenience which would otherwise be
332  unobtainable. It would ignore the realities of our society to believe people have a reasonable choice
333  concerning the security of their money other than relying upon a bank or other similar financial
334  institution.

335   Finally, the Plaintiff and the Defendant(s) are financially at odds to the same degree an
336  insurer and its insured are. In the bank relationship, a bank's interests become financially at odds
337  whenever it suffers a loss which is not attributable to the customer. For example, if a bank
338  improperly negotiates a check drawn upon a customer's account, thereby paying funds to a third
339  party, a loss occurs. The bank's interest is to shift that loss to the customer rather than reduce its
340  own capital reserves to cover the loss.

341   The same type of tension is created in the insurance relationship. As the court explained,
342  "[i]f the insurer pays a claim, it diminishes its fiscal resources. The insured, of course, has paid for
343  protection and expects to have its losses recompensed." (47 Cal.3d at p. 693.) If anything, the
344  insurance relationship is less confrontational because the loss is a risk calculated and planned for
345  by the insurer.

346   In sum, based upon the Supreme Court's analysis of the special relationship test, the
347  Defendant(s) and the Plaintiff possess the requisite special relationship which warrants permitting
348  the Plaintiff to proceed on a tort theory of breach of the covenant of good faith and fair dealing.

349   To deny the existence of this relationship is to deny the realities involved. As we move closer
350  and closer to a cashless society we become more and more reliant upon the services provided by
351  banks and other financial institutions. If a bank so chooses, it may deny its customer access to her
352  money for an indefinite period and the bank customer will have no recourse short of litigation.
353  Until that litigation is resolved, the customer may be unable to purchase even the most basic
354  necessities.

355  **38.**  Accordingly, the Plaintiff has a cause of action against the Defendant(s) for breach of the
356  covenant of good faith and fair dealing.

357  **39.**   Due to the Defendant(s) criminal actions and interference in interstate commerce, the
358  Plaintiff has been not had access to these funds for his personal use.

359  **40.**  The Defendant(s) breach of the covenant of good faith and fair dealing has affected the
360  Plaintiffs' dealings in interstate commerce by way of unlawfully debiting $43,244.35 USD from the
361  Plaintiffs' personal checking account #846180454. Compensatory damages demanded for the
362  second cause of action is **$43,244.35 x 3 = $129,733.05 USD.** (see Title 18 USC §1964).

363

*THIRD CAUSE OF ACTION ("Ex Delicto")*

*WRONGFUL DISHONOR ANALOGOUS TO COMMON-LAW SLANDER*

*("Trader Rule") AND MALICE*

**41.** *Plaintiff incorporates by reference as though fully set forth herein, all of the allegations contained in Paragraphs 1 through 40above.k*

**42.** *In summary, attaching a tort label to an action for wrongful dishonor developed a link to the law of defamation, and in particular the law of slander. One product of this association was the Trader Rule. It should be noted that both the contract and the tort theory of liability for wrongful dishonor could accommodate the Trader Rule, although the courts had to couch it in the appropriate doctrinal terminology. See Wiley v. Bunker Hill Nat'l Bank, 183 Mass. 495, 496, 67 N.E. 655, 656 (1903) (Trader Rule available in a contract action for wrongful dishonor); supra notes 28-35 and accompanying text.*

**43.** *In accordance with this view is language in Bank of Louisville Royal v. Sims. While the Court of Appeals of Kentucky did not have to consider the question whether punitive damages could be recovered under section U.C.C. §4-402, it expressed the opinion that had the action of the bank been willful or malicious, justifying a punitive award, damages of this kind [punitive] might have been recoverable as naturally flowing from this type of tortuous misconduct.*

**44.** *Again it was implied that if the common law prerequisites had been met, recovery of punitive damages might have been allowed notwithstanding the provisions of section 4402.29. It then appears that even though punitive damages are not expressly recoverable under the UCC, they may be obtained based on a common law action either in tort or contract. Under modern pleading it is not necessary to specify a particular tort or contract theory for a cause of action;*

**45.** *Originally there was no distinction between tort and contract. However, with the advent of causes of action a distinction arose. Nevertheless, the gap between tort and contract was never so wide that it could not be bridged, as was recognized as early as 1844:*

> *[W]here there is a contract, there may be an action of tort founded on the neglect to perform that duty, as such neglect amounts to deceit. The contract creates a duty, and the neglect to perform that duty is a misfeasance and a tort. See Brown v. Boorman, 11 Cl. & F. 1, 8 Eng. Rep. 1003, 1012 (1844).*

**46.** *This reasoning can be applied to the bank-depositor relationship;  and the view, that there is an implied contract between the bank and its customer and out of this contract arises a duty to pay the customer's checks, has been adopted in this country. See First Nat'l Bank v. Stewart, 204 Ala. 199, 85 So. 529 (1920) (liability arises out of the bank's implied contract, and out of the contract a duty to pay its depositor's checks on demand); First Nat'l Bank v. Shoemaker, 117 Pa. St. 94, 11 A. 304 (1887).*

**47.** *A duty to pay has also been imposed on the bank based on the debtor-creditor aspects of the bank-customer relationship. The imposition on the bank of a duty to pay a check is perhaps best grounded on policy reasons. In Valley National Bank v. Witter, the Supreme Court of Arizona noted that the bank-depositor relationship was essentially one of debtor-creditor and therefore contractual in nature.*

**48.** *The concept of an implied duty arising out of the bank depositor relationship has gained acceptance until it is now supported by the weight of authority. See Weaver v. Bank of America Nat'l Trust & Say. Ass'n, 59 Cal. 2d 428, 380 P.2d 644, 30 Cal. Rptr. 4 (1963); Waggoner v. Bank of Bernie, 220 Mo. App. 165, 281 S.W. 130 (1926).*

**49.** *As a part of his tort cause of action, a customer is required to establish malice before he can recover punitive damages. This requirement is almost universally recognized, by both the writers and the courts. see "E.g., C. MCCORMICK, DAMAGES § 81 (1935); C. MORRIS, TORTS 48 (1953); see, e.g., F. BOHLEN, STUDIES IN THE LAW OF TORTS 2-7 (1926); 2 F. HARPER & F. JAMES, LAW OF TORTS § 25.1 (1956); and Eshelman v. Rawalt, 298 I11. 192, 131 N.E. 675, 677 (1921).*

**50.** *Since the Defendant(s) actions were fraudulent, wanton in character and maliciously intentional the Plaintiff can recover punitive damages.  Punitive damages shall be awarded not as compensation to the Plaintiff but solely to punish, penalize, and deter the Defendant(s).*

**51.** *Since the Defendant(s) have committed and are committing SCIENTER ACTS (omitting knowledge) in Bad Faith, Fraud Conspiracy, Undue Enrichment, Theft, Willful and Wanton Harm, with Malice and Forethought,  the following punitive damages shall be awarded to the UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT, CLEVELAND, OHIO DIVISION;*

**52.** *Violations under Title 18 of the U.S. Code committed by the Defendant(s):*

**i)** *18 USC § 656 - Theft, embezzlement, or misapplication by bank officer or employee = $1,000,000 x 1 count;*

**ii)** *18 USC § 1005 - Bank entries, reports and transactions = $1,000,000 x 1 count;*

**iii)** *18 USC § 1341 - Frauds and swindles = $1,000,000 x 1 count;*

**iv)** *18 USC § 1344 - Bank fraud = $1,000,000 x 1 count;*

**v)** *18 USC § 1346 – Definition of "scheme or artifice to defraud" = $500,000 x 1 counts,*

*Therefore the total punitive damages = **$3,500,000.00 USD***

**53.** *Determination for additional punitive damages if the court deems proper.*

**WHEREFORE,** *Plaintiff seeks judgment as follows:*

**54.** *For an immediate order for relief in the amount of **$259,466.10 USD** representing the compensatory damages prayed for in the First and Second Cause of Action set forth above.  The actions of the Defendant(s) have caused the Plaintiff economic hardship.*

**55.** *For a judgment for punitive damages in an amount sufficient to punish and to make examples of these Defendant(s), and to deter these Defendant(s) and others from engaging in similar conduct; third cause of action Punitive damages equal $3,500,000.00 USD*

**56.** *For such other and further relief as this Court deems just and proper*

**Criminal Certification:** *I, Douglas H Smith, affiant do hereby certify and affirm that I have grounds to and do believe, that the above accused Defendant(s) committed the above offense(s) contrary to the laws of the U.S. Code.*

*Douglas H Smith*

**General Final Certification:** *I, Douglas H Smith, affiant, do hereby certify and affirm on my full commercial liability, that I have read the foregoing and know the content thereof, and that, to the best of my knowledge, understanding, and belief, it is true, correct, complete, not misleading, and is the truth, the whole truth, and nothing but the truth under the pains and penalties of perjury under the laws of the United States of America and International Law.*

County of Cuyahoga )
) *Commercial Oath*
Ohio state )

*Douglas H Smith*

March 24, 2014

**Notary**

On this date, the 24th of March, 2014, a man appearing in his true character, who identified himself as Douglas H Smith, appeared before me John SCARvaines a Notary Public residing in the County of Cuyahoga, in Ohio state, and attested to the truth to the information provided in the "*MEMORANDUM IN SUPPORT OF AN IMMEDIATE ORDER FOR RELIEF*" and the enclosed exhibits.

s/

Notary Public

JOHN S. CARVAINES
NOTARY PUBLIC, STATE OF OHIO
MEDINA COUNTY
My Commission Expires 5/20/2017

*13*